1  Raymond N. Stella Erlach, SBN 056958
   LAW OFFICES OF
2  RAYMOND N. STELLA ERLACH
   One Maritime Plaza, Fourth Floor
3  San Francisco, CA 94111
   Telephone: (415) 788-3322
4  Facsimile: (415) 788-8613
   E-Mail: rerlach@rayerlach.com
5
   Attorneys for Plaintiff Terry L. Ritter
6
                                                    E-filing
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10 _____
                                           )
11 TERRY L. RITTER,                        )  Civil Action No.
                                           )
12          Plaintiff,                      )
                                           )
13      v.                                  )  COMPLAINT
                                           )  FOR SECURITIES FRAUD
14 STEVEN PETER SMALL;                      )  UNDER RULE 10-b5
   LAW OFFICES OF STEVEN P. SMALL;          )  AND STATE AND
15 ROBERT VON FELDEN;                       )  COMMON LAW CLAIMS
   ECO-FIBER SOLUTIONS, INC., a California  )
16 corporation; NVS GROUP--DISPLAY          )  DEMAND FOR JURY TRIAL
   INNOVATIONS, INC., a Delaware            )
17 corporation, also known as              )
   NVS GROUP--DISPLAY PACKAGING             )
18 INNOVATIONS; and                         )
   DOES 1 THROUGH 100,                      )
19                                          )
            Defendants.                     )
20                                          )
                                           )
21 _____)

22

23          Comes now Plaintiff Terry L. Ritter and for claims for relief as against

24 Steven Peter Small; the Law Offices of Steven P. Small; Robert Von Felden; Eco-Fiber Solutions,

25 Inc., a California corporation; NVS Group--Display Innovations, Inc., a Delaware corporation, also

26 known as NVS Group--Display Packaging Innovations; and Does 1 through 100, alleges:

27

28

                                        Civil Action No. _____
                                        COMPLAINT FOR SECURITIES FRAUD
                        1               AND STATE AND COMMON LAW CLAIMS

PARTIES

1.      Plaintiff Terry L. Ritter is an individual now residing in Alameda County, California.

2.      Defendant Steven Peter Small is an attorney licensed to practice law in the State of California with offices at 2509-2511 Santa Clara Avenue, Alameda, California.  Defendant Law Offices of Steven P. Small is a business located in Alameda, California, form unknown, operated by Steven Peter Small as a law office and an evening law clinic.  Mr. Small and the Law Offices are collectively referred to as "SMALL."

3.      Defendant Robert Von Felden is an individual residing in Contra Costa County, California (herein "VON FELDEN").

4.      Defendant Eco-Fiber Solutions, Inc., is a California corporation with offices at SMALL's law offices in Alameda County, California ("EFS").  EFS was incorporated in August of 2007.  SMALL is the agent for service of process on EFS.

5.      Defendant NVS Group--Display Innovations, Inc., is a Delaware corporation also known as NVS Group--Display Packaging Innovations.  This entity is referred to as "NVS."  NVS lists its offices as 4425C Treat Boulevard in Concord, Contra Costa County, California, and also lists 645 Mariposa Street, San Francisco, California with the California Secretary of State as its principal place of business.

6.      Plaintiff is ignorant of the true names of Defendants Does 1through 100 and therefore sues those defendants by such fictitious names under the provisions of Section 474 of the Code of Civil Procedure.  Plaintiff is further informed and believes and thereon alleges that each of the fictitiously named defendants is responsible for plaintiff's damages in some manner for the occurrences herein alleged or is a necessary party for complete relief to be afforded.

7.      Plaintiff is informed and believes and thereon alleges that each of the defendants herein was, at all times relevant to this action, the agent, employee, representing partner, or joint venturer of the remaining defendants and was acting within the course and scope of that relationship.  Plaintiff is further informed and believes and thereon alleges that each of the defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining defendants.

1

## JURISDICTION AND VENUE

2      8.      This Court has original jurisdiction over this action as to first and second claims for

3  relief by virtue of Title 15, United States Code Section 77v(a) [Section 22(a) of the Securities Act],

4  on account of the federal securities claim, and by virtue of Title 15, United States Code

5  Sections 78u(d)(3)(A), 78u(e), and 78aa; and Title 28, United States Code Section 1331, and under

6  federal question jurisdiction Title 28, United States Code Section 1367(a).  This Court has

7  supplemental jurisdiction over all other claims for relief set forth herein under Title 28, United

8  States Code Section 1367(a).  In connection with the acts alleged in this Complaint, defendants,

9  directly or indirectly, used the means and instrumentalities of interstate commerce, including the

10  mails, airline travel across state lines and across the borders of these United States into foreign

11  lands, the mails, and the wires (including e-mails and the wiring of funds in the banking system, and

12  telephone communications).  In the course of effecting their scheme SMALL and VON FELDEN

13  traveled to Boston, induced plaintiff to travel to London, England, and SMALL and VON FELDEN

14  also traveled to Brussels, Belgium, and SMALL and VON FELDEN engaged in telephone and

15  e-mail transmissions across state lines.

16      9.      Venue is proper in the Northern District of California pursuant to Section 22 of the

17  Securities Act, Title 15, United States Code Section 77v; and Section 27 of the Exchange Act,

18  Title 15, United States Code Section 77aa, because Alameda County is the county in which the

19  principal events alleged herein constituting violations of the laws alleged herein took place, and

20  because it is the location of EFS and SMALL, and because Contra Costa County is the California

21  location of NVS.

22

## INTRADISTRICT ASSIGNMENT

23      10.      Pursuant to Local Rule 3-2(d), this matter is properly assigned to either the

24  San Francisco Division or the Oakland Division, as the events principally occurred in Alameda

25  County.

26

27

28

Civil Action No. _____
COMPLAINT FOR SECURITIES FRAUD
3                            AND STATE AND COMMON LAW CLAIMS

1

**BRIEF STATEMENT OF CLAIMS**

2    11.    Plaintiff was fraudulently induced to agree to pay $5,000,000 over 12 months to

3 purchase 45 percent of EFS stock and to obtain exclusive worldwide rights to proprietary processes

4 and intellectual property to manufacture technologically enhanced paper packaging products and

5 processes, all based on misrepresentations of SMALL, VON FELDEN, and NVS.  To the extent

6 SMALL and VON FELDEN acted through EFS, EFS participated in the fraudulent scheme.

7 Plaintiff paid $400,000 to defendants in the scheme.

8    12.    SMALL and VON FELDEN controlled EFS, and VON FELDEN controlled NVS.

9 SMALL and VON FELDEN used the Law Offices of SMALL to lend credence and an air of

10 lawfulness to the enterprise.  VON FELDEN used NVS to create false transactions which

11 purportedly involved EFS, but in reality did not, and to funnel EFS funds through NVS.

12

**OPERATIVE FACTS**

13    13.    On February 20, 2008, at Scott's Seafood Restaurant in Walnut Creek, in the

14 presence of plaintiff, Shamim Ritter, and Marc Vogel, VON FELDEN was asked by plaintiff how

15 the $5,000,000 cash contribution would be scheduled.  VON FELDEN stated that it would be on an

16 as-needed basis and $250,000 would take EFS "through the end of June."  He further stated that if

17 orders came in from Tyson Foods, more money would be needed for cash flow.

18    14.    When asked about other shareholders, on February 20, 2008, VON FELDEN stated

19 that Jim Nations was to have 4 to 8 percent of the stock if he raised $250,000 which would have

20 taken EFS "through to the end of June," but that he had failed to do so.  VON FELDEN stated that

21 Mr. Nations was to have received 4 to 8 percent of the shares of stock.

22    15.    Plaintiff agreed to the plaintiff's investment as described, but VON FELDEN said he

23 would have to talk to SMALL.  At 10:00 p.m., on February 20, 2008, VON FELDEN called

24 plaintiff and stated he had talked to SMALL and, "We have a deal."

25    16.    The next day, on February 21, 2008, plaintiff, Shamim Ritter, Marc Vogel, SMALL,

26 and VON FELDEN met at SMALL's law offices, and after discussion of the terms and conditions,

27 plaintiff and VON FELDEN executed a "binding" MOU for plaintiff's investment, and plaintiff

28 handed VON FELDEN a check for $100,000.

17.     On February 21, 2008, when plaintiff inquired of EFS needs, SMALL stated to plaintiff that EFS need $200,000 to $250,000 to get the company through June 2008, at which time the Tyson Foods orders "would be kicking in."

18.     During multiple in-person meetings with SMALL and VON FELDEN in mid-January 2008 to February 21, 2008, principally at the Law Offices of Steven P. Small, in Alameda, California, plaintiff was induced to commit to invest $5,000,000 over 12 months, of which he has paid $400,000 in cash, for shares of EFS stock and marketing rights, which shares did not exist.  Plaintiff was induced to continue investing and paying funds by ongoing misrepresentations after February 21, 2008 until the end of May 2008, when plaintiff obtained counsel and requested information concerning the use of funds, which was not provided.  During the in-person meetings in January and February 2008, to induce plaintiff to invest, SMALL and VON FELDEN made the following misrepresentations to plaintiff, principally at the Law Offices of Steven P. Small in Alameda, California:

a.     Oral and written:  VON FELDEN had assigned to EFS proprietary and patentable chemical treatments for water resistant, nonwicking paper for use in multiple markets, including food, frozen goods, fresh fish and meats, fresh produce, and in any circumstances where cost effective waterproof packaging was desired.  The packaging was purportedly superior to polystyrene and wax-coated alternatives currently in use in such food industries, in that it was a "green product":  biodegradable, recyclable, repulpable, nontoxic in its fresh and in its degraded state, and did not emit toxins when burned, buried, or stored, made no use of petroleum products, and could be fully integrated with the manufacturing and production systems for paper coating in the paper container and corrugated box industry.

»     The true facts were that VON FELDEN had not assigned his patent rights to EFS, and he had no intent to do so; and, on information and belief the patentability of VON FELDEN's "invention" was highly speculative in that major paper container industry companies would not execute standard nondisclosure agreements with EFS.  The true facts were known to defendants, but defendants concealed same from plaintiff to induce plaintiff to invest in EFS in the amounts hereinalleged.

Civil Action No. _____
COMPLAINT FOR SECURITIES FRAUD
AND STATE AND COMMON LAW CLAIMS

5

1            b.     Oral:  Plaintiff's investment capital would be used for the sole and exclusive

2   purpose of *bona fide* postinvestment costs of EFS and not for preinvestment expenses or for

3   reimbursements to SMALL and VON FELDEN for prior contributions to EFS or for their past

4   expenses, and with plaintiff's capital, EFS's products would be marketed to major industry

5   companies who were anxious to use EFS's products.  .

6            »     The true facts were that SMALL and VON FELDEN intended to use the

7   plaintiff's funds to enrich themselves and pay personal expense items and past expense items.  No

8   major industry companies were anxious to purchase EFS products.  The true facts were known to

9   defendants, but defendants concealed same from plaintiff in order to induce plaintiff to invest.  For

10  example, SMALL paid for such items as his daughter's cellular telephone bills, his utility bills, his

11  law office rent, his law office staff, his law office copier, his Comcast bill, and other non-EFS

12  expenses from plaintiff's investment funds.

13           c.     Oral and written:  EFS had issued shares of stock and a limited and finite

14  number of investors had purchased stock, such that plaintiff would receive a 45 percent

15  nondilutable equity position in EFS.

16           »     The true facts were that EFS had no shares issued, had not observed

17  corporate formalities, and that SMALL and VON FELDEN intended to and were continuing to

18  "sell" shares of EFS to "investors" who were not on the list of shareholders and whose contributions

19  were being received as "equity."  The true facts were that defendants had promised shares to others

20  who were not on the shareholders list, whose claims would dilute plaintiff's interest, and who were

21  not disclosed to plaintiff.  The true facts were known to defendants, but defendants concealed same

22  from plaintiff to induce plaintiff to invest in EFS stock.  Subsequently, defendants attempted to

23  cover up these transactions, and for instance, VON FELDEN took the funds for such sales from

24  EFS and paid them to himself, recharacterizing the transactions as purported *resales* of

25  VON FELDEN's purported shares, which resale transactions were also unlawful and violated state

26  and federal securities laws and exposed EFS to further liability.

27           d.     Oral:  EFS had significant orders for sales of EFS proprietary coated paper

28  and packaging products to companies in the food industry needing packaging for retail marketing.

1    »      The true facts were that EFS did not have the orders and/or sales.  Defendants

2    knew of the true facts, but defendants concealed same from plaintiff.

3    e.      Oral and written:  Plaintiff's $5,000,000 investment would be paid in stages

4    as EFS needed to fund operations, and no more than $250,000 would be needed to fund

5    EFS operations through the end of June 2008.

6    »      The true facts were that VON FELDEN and SMALL intended to demand

7    plaintiff fund in excess of $250,000 long before June 2008, in order to pay themselves excessive

8    salaries [as alleged in subsection (i)], and pay personal expenses from plaintiff's investment funds

9    [as alleged in subsection (b)].  When plaintiff had paid $400,000 by May 2008 (i.e., $150,000 in

10   excess of the sum represented as needed to the end of June), defendants yet demanded even more

11   funds and then falsely asserted plaintiff was in breach of the agreements by not paying the

12   additional amounts.

13   f.      Written:  Defendants promulgated a written "Private Placement

14   Memorandum" which SMALL gave to plaintiff at a meeting with SMALL and VON FELDEN,

15   which was intended to induce plaintiff to invest in EFS.  The Private Placement Memorandum was

16   highly misleading, failed to adequately describe risk factors, made statements, which due to omitted

17   material, were highly misleading and failed to accurately describe the investment and the

18   assignment of the technology and its patentability.  SMALL also demanded the Memorandum be

19   returned to him after plaintiff had read it, and promised he would return the Memorandum to

20   plaintiff.

21   »      The true facts were that the investment in EFS stock was highly speculative

22   and risky.  The technology was not owned by the company, and on information and belief, major

23   industry companies would not sign standard nondisclosure agreements when dealing with EFS or

24   defendants because of the speculative nature of the technology.  The true facts were that defendants

25   intended to refuse to return the Private Placement Memorandum to plaintiff once plaintiff

26   committed in writing to invest, and despite accepting six checks from plaintiff equaling $400,000,

27   to conceal their wrongdoing, defendants have refused and continue to refuse to return to plaintiff

28

1   the Private Placement Memorandum.  The true facts were known to defendants, but defendants

2   concealed same from plaintiff.

3          g.      Oral and written:  EFS products had been "certified" or placed "on the

4   approved list for use" by major food industry companies.

5          »      The true facts were that SMALL and VON FELDEN were "pitching" EFS

6   products to these companies, but SMALL and VON FELDEN could not even get these companies

7   to sign standard nondisclosure agreements with EFS, in that, on information and belief, the

8   companies were skeptical about the EFS technology and its products.  Defendants knew the true

9   facts, but defendants concealed them from plaintiff in order to induce plaintiff to invest.  EFS

10  products were not certified or approved by any major company.

11         h.      Oral and written:  EFS had offices and operations on Castro Street in San

12  Leandro, California.

13         »      The true facts were that at the San Leandro location, an automobile repair

14  shop had been doing business for 20 years, with the proprietor merely receiving chemicals for EFS

15  from time to time as a "favor to SMALL."  Defendants knew the true facts, but defendants

16  concealed same from plaintiff to induce plaintiff to invest.

17         i.      Written and oral:  Defendants would disclose their employment agreements

18  with EFS to plaintiff, and such insiders as SMALL and VON FELDEN would agree to

19  commercially reasonable employment agreements, within reasonable industry bounds, and would

20  be reduced to writing.

21         »      The true facts were SMALL and VON FELDEN had no intention of

22  disclosing their purported employment agreements to plaintiff and concealed the purported payment

23  provisions of same from plaintiff, in order that they could increase payments to themselves as EFS

24  received plaintiff's investment funds, and SMALL and VON FELDEN would not reduce their

25  agreements to writing.  Based on information provided by SMALL, SMALL increased his own pay

26  from $762.89 per pay period to $6,729.13 per pay period, using the funds contributed by plaintiff.

27  VON FELDEN engaged in a similar increase from $1,545.73 to $6,733.05 per pay period, using the

28  funds contributed by plaintiff.

1    j.    Written and oral:  SMALL and VON FELDEN promised plaintiff he would

2 receive exclusive worldwide rights outside of North America to exploit the technology through

3 plaintiff's dba "Eco-Fiber Solutions, International," as well as exclusive worldwide rights to certain

4 non-chicken, non-fish industries.

5    »    The true facts were SMALL and VON FELDEN intended to keep worldwide

6 rights themselves, and on the pretext of attending meetings with German manufacturers of paper

7 coating machinery, began marketing in plaintiff's territories, including attending a European trade

8 show in Brussels, cutting plaintiff out of the market.  Defendants made the representations to obtain

9 $400,000 from plaintiff.

10    k.    Written and oral:  SMALL and VON FELDEN promised plaintiff would

11 immediately have two *permanent* seats on the five-seat Board of Directors of EFS, and plaintiff

12 would have a voice and two votes in the direction of EFS corporate operations.

13    »    The true facts were SMALL and VON FELDEN did not intend to permit

14 plaintiff to have accurate information on the operation of EFS, much less the voice and vote of two

15 seats on the Board of Directors.  The true facts are that after plaintiff invested substantial funds, and

16 plaintiff's questions were becoming increasingly difficult to answer, SMALL and VON FELDEN

17 objected to plaintiff's attempts to exercise his rights and contended he was "interfering" when

18 plaintiff asked questions about EFS financial and business matters which defendants did not want to

19 answer.  Concealing their use of the funds which were intended to be used to promote EFS business

20 opportunities, defendants took plaintiff's investment funds and instead:  made undocumented

21 expense reimbursements to themselves ($77,219.75), made advances, and undefined payments to

22 themselves and their associates, paid expenses of the Law Offices of Steven P. Small, and paid

23 substantial sums to NVS ($40,547) which had no legitimate business with EFS, defendants took

24 their wives to Brussels and Paris, defendants accessed EFS funds through automatic teller machines

25 ($4,000), and paid their parking tickets, and SMALL also paid for "Comcast" cable service to his

26 residence on Sea Ridge Way in Alameda, California, a location where EFS did not conduct

27 business.

28

19.    The plaintiff's investment agreement was reduced to writing, with editing by SMALL, and was executed by VON FELDEN and Terry L. Ritter in a Memorandum of Understanding dated February 21, 2008 ("MOU").  Although in memorandum form, the MOU stated it was "accepted and binding upon all parties."  SMALL as counsel for EFS approved the MOU.  A true copy of the MOU is attached hereto as Exhibit 1 and is incorporated as though fully set forth.  Defendants had no intention of performing in accordance with the MOU.

## LOSS CAUSATION

20.    In direct reliance on the defendants' foregoing misrepresentations, concealments, and failures to disclose, plaintiff agreed to invest $5,000,000 for 45 percent of EFS shares of stock, and the exclusive marketing rights outside of North America, to be paid over twelve months.  Plaintiff was to have two permanent directors on the five-person Board of Directors, and Terry L. Ritter and Shamim S. Ritter were each given EFS business cards by defendants describing such titles.  (As defendants received substantial contributions from plaintiff, defendants began to object to plaintiff's inquiries concerning use of funds, and complained plaintiff was "interfering" and blocked plaintiff's participation in corporate operations and governance, and began to "freeze" plaintiff out of decisions in developing EFS business.)  On account of the misrepresentations and omissions alleged above, plaintiff was induced to invest $400,000 in EFS shares.  The shares are worthless in that EFS does not own the rights to the technology as represented, and those rights are necessary to protect the products; and EFS has no bona fide sales or prospects of sales as represented.

21.    Upon execution of the MOU, plaintiff provided Defendants SMALL, VON FELDEN, and EFS with a check for good funds for $100,000, on a bank in the national banking system, and defendants deposited and transacted the check for full value.  Thereafter, on defendants' later requests for funding under the MOU, plaintiff provided four further checks and one wire transfer on banks in the national banking system, and defendants deposited and transacted each of those checks and the wire at banks for full value.  From February 21, 2008, to April 11, 2008, in total, plaintiff paid defendants six times as follows:

Three payments for $100,000 each:   $300,000

One payment for $15,000:              $15,000

| | | |
|---|---|---|
| 1 | One payment for $35,000: | $35,000 |
| 2 | One payment for $50,000: | $50,000 |
| 3 | | _____ |
| | Total six payments: | $400,000 |
| 4 | | |

22.     During the period February 22, 2008, to April 22, 2008, defendants continued to misrepresent material information and conceal material information from plaintiff to induce plaintiff to continue to invest and fund EFS in accordance with the MOU.  Had plaintiff known of the true facts, plaintiff would not have invested any funds after February 21, 2008.

23.     During the period following February 21, 2008, SMALL and VON FELDEN made the following misrepresentations to plaintiff, principally at the Law Offices of Steven P. Small, in Alameda, California, to induce plaintiff to continue to invest:

a.     Oral:  Defendants had asserted EFS was making lucrative sales and had orders for proprietary EFS products.  Defendants agreed to disclose same to plaintiff to induce plaintiff to continue to pay funds to EFS under the MOU.

»     The true facts were EFS did not have the sales or orders defendants touted.

b.     Written:  SMALL and VON FELDEN showed plaintiff copies of EFS "books and records" which showed EFS had paid out "commissions" for sales of EFS product.

»     The true facts were that EFS did not have the sales.  SMALL and VON FELDEN caused EFS to pay out "commissions" to their associates, but there were no corresponding sales of EFS products on which a proper commission was payable.

c.     Oral:  SMALL advised plaintiff that he would provide plaintiff with the communications and orders with Tyson Foods for EFS products.

»     The true facts were SMALL and VON FELDEN had misrepresented the communications from Tyson Foods and did not intend to provide plaintiff with the communications and orders with Tyson Foods and never did so, and on information and belief no such orders had been received [see subsection (f)].

d.     Oral:  SMALL and VON FELDEN told plaintiff that EFS had a letter from Tyson Foods stating that EFS was one of Tyson Foods' "certified" 16 top suppliers and promised to

1   show plaintiff the letter. When plaintiff inquired about the letter, SMALL and VON FELDEN

2   made various excuses.

3           »       The true facts were that defendants either never had such a letter, or they

4   never intended to show it to plaintiff, but mentioned it only to induce plaintiff to continue to

5   contribute funds to EFS under the MOU.

6           e.      Oral: After plaintiff's requests, SMALL and VON FELDEN continuously

7   promised financial statements and key documents describing relationships with major industry

8   partners which they were touting. When the documents were not produced, SMALL would blame

9   his computer or his e-mail system. VON FELDEN would blame "Larry the salesman" for not

10  forwarding the documents to plaintiff.

11          »       The true facts were that defendants never had such documents or they never

12  intended to show same to plaintiff, but represented to plaintiff they had the documents only to

13  induce plaintiff to continue to contribute funds to EFS under the MOU.

14          f.      Oral and written: After repeated questioning by plaintiff and in an attempt to

15  obtain yet more money from plaintiff, SMALL eventually agreed to show plaintiff the "three largest

16  purchase orders" which EFS had received, to induce plaintiff to pay funds to EFS under the MOU.

17          »       The true facts were as alleged in the left column below. While SMALL was

18  representing that EFS had hard copies of orders for EFS products, the "orders" did not exist or did

19  not exist as to nearly 85 percent of the claimed orders, and SMALL was attempting to induce

20  plaintiff to contribute further funds to EFS under the MOU:

21

22

23

24

25

26

27

28

| MISREPRESENTATION | TRUE FACTS |
|---|---|
| Cosmic Pet Carriers Purchase Order for $100,000. | A letter was done as favor to SMALL, but it is not a current Purchase Order and provides "as needed per draw of product," $100,000 was not drawn, and at most $30,000 was drawn, and the owner has no intention of ordering more. |
| H&N Seafoods Purchase Order for $32,000. | Actually an EFS quote for $13,900 with no order whatsoever. |
| Copper River Purchase Order for $1,800. | No Purchase Order provided. |
| Kraft/NVS Purchase Order for $52,000. | Not EFS products or technology.  (This "Purchase Order" was dated five days *after* SMALL stated it had been received, and it was from NVS, a company controlled by VON FELDEN.)  VON FELDEN "papered" the transaction to create a false Purchase Order to EFS. |
| Total:  $185,800 misrepresented. | Possibly $30,000 actual. |

24.    After the execution of the MOU, pursuant to its terms, plaintiff sought to review the employment contracts of SMALL and VON FELDEN and any other employees as called for in the MOU.  Defendants refused in order to increase the amount of moneys which Defendants SMALL and VON FELDEN were paying themselves and to pay past obligations, all contrary to the representations made to plaintiff.

SCIENTER

25.    SMALL and VON FELDEN acted intentionally or with reckless disregard for whether the statements were true or false in the misrepresentations alleged above and in the failures to disclose material facts they were under a duty to disclose.

26.    In addition to the misrepresentations set forth above, Defendants SMALL and VON FELDEN failed to disclose and omitted to state material facts that they were under a duty to disclose or that were necessary to make the other statements they had made, in light of the circumstances in which they were made not misleading.

1       27.     Defendants SMALL and VON FELDEN's conduct constituted such extreme

2  departures from the standards of ordinary care, and was so obvious, that each must have been aware

3  that he was misleading plaintiff.

4                           RELIANCE

5       28.     Plaintiff relied on the representations of SMALL and VON FELDEN and proceeded

6  to make the initial capital contribution of $100,000 to EFS, and in deciding to make the subsequent

7  capital contributions of $300,000 to EFS.

8       29.     The failure of SMALL and VON FELDEN to reveal information material to

9  investment in EFS as described above directly altered the decisions of plaintiff to make the initial

10  capital contribution of $100,000 to EFS and in deciding to make the subsequent capital

11  contributions of $300,000 to EFS.

12                    VIOLATIONS ALLEGED

13       30.     SMALL and VON FELDEN, by engaging in the above conduct, violated the

14  registration provisions of Section 12(a)(1) of the Securities Act of 1933 ("Securities Act"), Title 15,

15  United States Code Sections 77a, *et seq*.  SMALL and VON FELDEN, individually and through

16  EFS, the Law Offices of Steven P. Small, and NVS which are their own controlled

17  instrumentalities, by engaging in the conduct alleged above, have violated the antifraud provisions

18  of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Title 15, United States

19  Code Section 78j(b), and Rule 10b-5 thereunder, 17 Code of Federal Regulations

20  Section 240.10b-5.

21       31.     Additionally, SMALL and VON FELDEN violated California's Corporate Securities

22  Law of 1968 in making the false and misleading statements alleged above (California Corporations

23  Code Sections 25401, 25501, 25504, and 25504.1); and in offering and selling securities which

24  were neither qualified nor exempt under California law (California Corporations Code

25  Sections 25110 and 25130).

26

27

28

1

<u>FIRST CLAIM FOR RELIEF</u>

2

<u>SECURITIES FRAUD UNDER SECTION 10(b), 1934 ACT</u>

3          32.     Plaintiff realleges and incorporates by reference paragraphs 1 through 31 of this

4    Complaint.

5          33.     Defendants, directly or indirectly, in the course of selling EFS to plaintiff, used the

6    mails and/or the means and instrumentalities of interstate commerce, including the federal banking

7    system.

8          34.     In such sales, defendants, directly or indirectly, with scienter:

9                  a.    employed devices, schemes, and artifices to defraud;

10                 b.    made untrue statements of material facts and omitted to state material facts

11   necessary in order to make the statements made, in the light of the circumstances under which they

12   were made, not misleading; and,

13                 c.    engaged in acts and practices which operated or would operate as a fraud or

14   deceit upon other persons.

15         35.     Plaintiff relied upon and were induced by defendants' conduct to purchase EFS

16   shares of stock.  Plaintiff was damaged by the untrue statements and artifices in the total amount of

17   such purchases, $400,000, as the investments are completely worthless.

18         36.     On account of such acts, defendants directly or indirectly violated 15 United States

19   Code Section 78j(b) [Section 10(b) of the Securities Exchange Act of 1934] and Rule 10b-5

20   promulgated thereunder (17 Code of Federal Regulations Section 240.10b-5).

21         37.     On account of such defendants' acts, such defendants are liable to plaintiff.

22   Wherefore, plaintiff requests relief as set forth in the prayer below.

23   /////////////////////////

24   /////////////////////////

25   /////////////////////////

26   /////////////////////////

27   /////////////////////////

28   /////////////////////////

SECOND CLAIM FOR RELIEF

OFFER AND SALE OF UNREGISTERED SECURITIES

VIOLATIONS OF SECTION 12(a)(1) OF THE SECURITIES ACT

38.      Plaintiff realleges and incorporates by reference paragraphs 1 through 31 of this Complaint.

39.      SMALL, VON FELDEN, EFS, and NVS, by engaging in the conduct described above, directly or indirectly:

   a.      Made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities through the use or medium of any prospectus or otherwise;

   b.      Carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale; or

   c.      Made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of any prospectus or otherwise, securities.

40.      No registration statement has been filed for any of the securities offered and sold o caused to be sold by defendants to plaintiff, nor were those offerings exempt rom registration.

41.      Defendants have violated Section 12(a)(1) of the Securities Act by the offer and sale of unregistered securities of EFS to plaintiff.

42.      Plaintiff has been damaged in the amount of $400,000 and at a minimum is entitled pursuant to Title 15, United States Code Section 771(a)(1) to receive the full value of the consideration he has paid, plus interest, from defendants.

43.      By reason of the foregoing, Defendants SMALL, VON FELDEN, EFS, and NVS violated Section 12(a)(1) of the Securities Act, Title 15, United States Code Sections 77a, *et seq*.

44.      On account of such defendants' acts, such defendants are liable to plaintiff. Wherefore, plaintiff requests relief as set forth in the prayer below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THIRD CLAIM FOR RELIEF

## FOR SALE OF SECURITIES IN VIOLATION OF

## CALIFORNIA QUALIFICATION REQUIREMENT

45.    Plaintiff realleges and incorporates by reference paragraphs 1 through 31 of this Complaint.

46.    On or about each of the alleged dates in 2008 in Alameda, California, defendants offered and sold to plaintiff interests in EFS for the total price alleged hereinabove.

47.    Each of these sales of interests in EFS was an issuer transaction in that defendants established EFS and then purveyed interests in EFS to plaintiff and other unsuspecting members of the public.  Defendants' intent and motive was to obtain plaintiff's funds and convert same for their own uses through the unlawful sales of unqualified, nonexempt securities.  None of the defendants were licensed securities brokers or salesmen.

48.    Each of these sales constituted an issuer transaction in that it was part of an offering of unqualified, nonexempt securities of EFS for the capitalization of EFS.

49.    Each of these transactions was subject to qualification, was not exempt from qualification, and was not and to the date of this Complaint has not been qualified as any permitted securities transaction with the California Commissioner of Corporations or with the Securities and Exchange Commission.  Each of these transactions was unlawful under California Corporations Code Sections 25110 and 25130.

50.    As a result of the above-described acts, under California's Corporate Securities Law, defendants are liable to plaintiff who is entitled to, and hereby does, rescind the above-described purchases.  Plaintiff, before entry of judgment, will tender to defendants all interests in EFS sold to plaintiff as purchased from defendants, and any income received thereon.

51.    On account of such defendants' acts, such defendants are liable to plaintiff. Wherefore, plaintiff requests relief as set forth in the prayer below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOURTH CLAIM FOR RELIEF

MATERIAL MISREPRESENTATION IN SECURITIES TRANSACTION

UNDER CALIFORNIA CORPORATE SECURITIES LAW

52.    Plaintiff realleges and incorporates by reference paragraphs 1 through 31 of this Complaint.

53.    Defendants' sales of interests in EFS as alleged above were made by means of oral and written communication from the defendants, which omitted to state material facts necessary in order to make the statements made in those communications, in light of the circumstances under which they were made, not misleading, and which contained untrue statements of material fact.  The communications from defendants were misleading and untrue as alleged hereinabove.  Defendants SMALL, VON FELDEN, and EFS were sellers in the transactions.  Defendants SMALL, VON FELDEN, NVS, and the Law Offices of Steven P. Small were also agents of EFS, who with intent to induce plaintiff's reliance, materially aided in the acts, misrepresentations and omissions, and transactions in the sale of EFS shares of stock, for which transaction liability is imposed under Section 25501 of the California Corporations Code, and are thus each jointly and severally liable to plaintiff under Sections 25504 and 25504.1 of the California Corporations Code for all of plaintiff's damages arising from the violation of Section 25501.

54.    As a result of the material misrepresentation, plaintiff is entitled to rescind the above-described purchases and to damages under California Corporations Code Sections 25504 and 25504.1.

55.    As a result of the above-described acts, under California's Corporate Securities Law, defendants are liable to plaintiff who is entitled to, and hereby does, rescind the above-described purchases.  Plaintiff, before entry of judgment, will tender to defendants all interests in EFS sold to plaintiff as purchased from defendants and any income received therefrom.

56.    On account of such defendants' acts, such defendants are liable to plaintiff. Wherefore, plaintiff requests relief as set forth in the prayer below.

1

<u>FIFTH CLAIM FOR RELIEF</u>

2

<u>COMMON LAW FRAUD</u>

3         57.      Plaintiff realleges and incorporates by reference paragraphs 1 through 31 of this

4    Complaint.

5         58.      In the course of the representations, statements, half-truths, partial disclosures, and

6    omissions alleged hereinabove, defendants directly or indirectly made material representations to

7    plaintiff which were false, and defendants directly or indirectly made material omissions to plaintiff

8    which failed to provide material information to plaintiff.

9         59.      Defendants knew that their material representations were false, and defendants knew

10   that their material omissions would mislead plaintiff into thinking material matters were true when

11   in fact such matters were false.

12        60.      In making the material misrepresentations and material omissions alleged herein,

13   defendants intended to deceive plaintiff and to induce plaintiff to invest in EFS and to induce

14   plaintiff to continue investing in EFS.

15        61.      Plaintiff was in fact deceived by the defendants' material misrepresentations and

16   material omissions.  Had plaintiff known the truth, plaintiff would not have invested and would not

17   have maintained his investment in EFS.

18        62.      In that Defendant SMALL was a licensed attorney and used the Law Offices of

19   Steven P. Small to perpetrate the scheme, plaintiff justifiably relied on defendants' material

20   misrepresentations and material omissions.

21        63.      Plaintiff has been damaged in the amounts of his purchases of the investments in

22   EFS and in the contribution of his time and effort in aid of the purported corporate goals.

23        64.      In the commission of the acts herein, defendants intended to cause injury to plaintiff,

24   knew that the conduct described herein would cause injury to plaintiff, and acted out of malice,

25   fraud, and oppression as defined in Civil Code Section 3294.  Such conduct was calculated to injure

26   plaintiff, and plaintiff should recover, in addition to actual damages, exemplary damages to make an

27   example of and to punish defendants.

28

1    65.    On account of such defendants' acts, such defendants are liable to plaintiff.

2    Wherefore, plaintiff requests relief as set forth in the prayer below.

3                        SIXTH CLAIM FOR RELIEF

4                        NEGLIGENT MISREPRESENTATION

5    66.    Plaintiff realleges and incorporates by reference paragraphs 1 through 31 of this

6    Complaint.

7    67.    In the course of the representations, statements, half-truths, and partial disclosures

8    alleged hereinabove, defendants directly or indirectly made positive material representations to

9    plaintiff which were false.

10    68.    Defendants had no reasonable grounds for believing their statements to plaintiff were

11    true.

12    69.    In that Defendant SMALL is a licensed attorney, plaintiff justifiably relied on

13    defendants' material misrepresentations and material omissions.

14    70.    Plaintiff has been damaged in the amounts of his purchases of the investments in

15    EFS.

16    71.    In the commission of the acts herein, defendants intended to cause injury to plaintiff,

17    knew that the conduct described herein would cause injury to plaintiff, and acted out of malice,

18    fraud, and oppression as defined in Civil Code Section 3294.  Such conduct was calculated to injure

19    plaintiff, and plaintiff should recover, in addition to actual damages, exemplary damages to make an

20    example of and to punish defendants.

21    72.    On account of such defendants' acts, such defendants are liable to plaintiff.

22    Wherefore, plaintiff requests relief as set forth in the prayer below.

23    //////////////////////////

24    //////////////////////////

25    //////////////////////////

26    //////////////////////////

27    //////////////////////////

28    //////////////////////////

1

## SEVENTH CLAIM FOR RELIEF

2

## CONVERSION OF PLAINTIFF'S MONEY

3    73.    Plaintiff realleges and incorporates by reference paragraphs 1 through 31 of this

4    Complaint.

5    74.    By engaging in the conduct alleged, defendants converted plaintiff's assets for their

6    own use and benefit, with the other defendants using EFS as a conduit to pocket plaintiff's

7    investment funds.

8    75.    In the commission of the acts herein, defendants intended to cause injury to plaintiff,

9    knew that the conduct described herein would cause injury to plaintiff, and acted out of malice,

10   fraud, and oppression as defined in Civil Code Section 3294.  Such conduct was calculated to injure

11   plaintiff, and plaintiff should recover, in addition to actual damages, exemplary damages to make an

12   example of and to punish defendants.

13   76.    As a result of defendants' acts, plaintiff was damaged in the amount of $400,000.

14   77.    On account of such defendants' acts, such defendants are liable to plaintiff.

15   Wherefore, plaintiff requests relief as set forth in the prayer below.

16

## EIGHTH CLAIM FOR RELIEF

17

## INJUNCTIVE RELIEF

18   78.    Plaintiff realleges and incorporates by reference paragraphs 1 through 31 of this

19   Complaint.

20   79.    Plaintiff is entitled to extraordinary and equitable relief to prevent defendants from

21   looting the corporation and to prevent defendants from selling more illegal securities to investors

22   which sales will irreparably harm plaintiff in three distinct ways:  (a) by dilution of plaintiff's

23   45 percent interest; (b) by creating corporate liability to investors for omissions, concealments, and

24   nondisclosures; and (c) by conducting unlawful resales of shares of stock.

25   80.    Defendants have already conducted at least one such "sale," and plaintiff is in

26   immanent danger that defendants will continue to unlawfully sell EFS "shares" to the unsuspecting

27   public.

28

Civil Action No. _____

COMPLAINT FOR SECURITIES FRAUD
AND STATE AND COMMON LAW CLAIMS

1    81.    Plaintiff is also entitled to an injunction to prevent defendants from interfering with,

2    circumventing, and damaging plaintiff's exclusive worldwide rights outside of North America and

3    his worldwide rights as to agreed industries pursuant to the MOU.

4    82.    Plaintiff's remedy at law is inadequate in that money damages cannot compensate

5    plaintiff for the losses he will sustain if defendants are not restrained and enjoined, which will be

6    great and irreparable.

7    83.    On account of such defendants' acts, such defendants are liable to plaintiff.

8    Wherefore, plaintiff requests relief as set forth in the prayer below.

9                              NINTH CLAIM FOR RELIEF

10                             FOR DECLARATORY RELIEF

11    84.    Plaintiff realleges and incorporates by reference paragraphs 1 through 31 of this

12    Complaint.

13    85.    An actual, ripe, and justiciable controversy has arisen over plaintiff's rights under the

14    MOU.  Defendants contend plaintiff has "interfered" with the conduct of EFS business and has

15    breached plaintiff's obligations under the MOU.  Plaintiff contends he has not breached the MOU.

16    Plaintiff contends that defendants have frozen plaintiff out of two permanent seats on the Board of

17    Directors, refused to share important information with him (including the status and nature of the

18    pending patent and the assignment of rights thereunder to EFS), and have asserted plaintiff is

19    "interfering" in EFS operations.

20    86.    On account of such defendants' acts, such defendants are liable to plaintiff.

21    Wherefore, plaintiff requests relief as set forth in the prayer below.

22                                    PRAYER

23    Wherefore, plaintiff prays for judgment against defendants and each of them as

24    follows:

25              (1)    For Damages;

26              (2)    For such further and other relief as is just;

27              (3)    For exemplary damages;

28

1              (4)    For interest on all sums;

2              (5)    For equitable, extraordinary, and injunctive relief, including a

3    temporary restraining order, preliminary injunction, and a permanent injunction preventing

4    defendants from further unlawful sales of EFS shares and from further interference with plaintiff's

5    worldwide rights to market EFS products;

6              (6)    For a declaration of plaintiff's and defendants' respective rights and

7    obligations under the MOU;

8              (7)    For costs of suit.

9                       LAW OFFICES OF
                   RAYMOND N. STELLA ERLACH

10

11   Dated:  June 25, 2008

12                      Raymond N. Stella Erlach
                   Attorneys for Plaintiff Terry L. Ritter

13

14                     DEMAND FOR JURY TRIAL

15           Plaintiff hereby demands trial by jury on all claims for which trial by jury is possible.

16                      LAW OFFICES OF
                   RAYMOND N. STELLA ERLACH

17

18   Dated:  June 25, 2008

19                      Raymond N. Stella Erlach
                   Attorneys for Plaintiff Terry L. Ritter

20   jp80\r\ef\complaint

21

22

23

24

25

26

27

28

                                      Civil Action No. _____
                                 COMPLAINT FOR SECURITIES FRAUD
              23       AND STATE AND COMMON LAW CLAIMS

## Memorandum of Understanding

This **Memorandum Of Understanding** (this "MOU") is entered into as of February 21, 2008 between Eco-Fiber Solutions, a California corporation, (hereinafter, "Company"), and Terry L. Ritter (hereinafter, "Investor") with reference to the following:

| | |
|---|---|
| Board Member Seats: | 2 Seats - Permanent  *out of four TLR* |
| Business Consultant: | Mr. Marc Vogel<br>Monthly salary to be mutually acceptable |
| Employment Agreements: | Company to prepare mutually acceptable employment contracts for all Company employees, including, but not limited to: salary, benefits, and Company stock options. |
| Worldwide Operations: | Investor to establish: Eco-Fiber Solutions, International (EFSI) EFSI shall be authorized to distribute Company products outside of North America and to certain industries worldwide. Company shall receive 25% of net product sales. |
| Equity Ownership: | 45% of Company stock |
| Total Investment: | $5,000,000 USD |
| Investment Terms: | $100,000 upon MOU execution |
| | Balance to be paid to Company within next 12 months on a mutually acceptable "use of funds" basis. |
| Stock Registration: | Investor's stock shall be registered at Company's expense concurrently with first registration rights of any other Company stock or prior to Company's initial public offering. |

This MOU is understood, accepted, and binding upon all parties.

By:    Eco-Fiber Solutions

Mr. Robert Von Felden, President

By:    Investor

Mr. Terry L. Ritter, individual

EXHIBIT 1